UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**DENNIS M. THILL**,

    Plaintiff,

vs.

    No. 2:13-cv-14151
    Hon. Gerald E. Rosen

**OCWEN LOAN SERVICING, LLC.**,
**NATIONAL TRUST COMPANY**, as
Trustee for the Residential Accredit Loans,
Inc., Mortgage Asset-Backed
Pass-Through Certificates, Series 2005-QS9;
and **UNKNOWN HOLDERS**, the currently
unknown certificate-holders of the
Residential Accredit Loans, Inc., Mortgage
Asset-Backed Pass-Through Certificates,
Series 2005-QS9,

    Defendants.
_____/

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

**I. INTRODUCTION**

   This is but one of the nearly one hundred foreclosure-related actions in this District in which Plaintiff's counsel, Gantz Associates, has appeared since 2011. Here, as with so many others authored by Gantz Associates, Plaintiff's Complaint raises a myriad of claims seeking to halt a pending foreclosure proceeding under the theory that the federal government incentivizes lenders and servicers to

1

foreclose upon properties, who then in turn "force" helpless homeowners into default through the guise of a loan modification that is never coming. Presently before this Court is Defendants' Motion to Dismiss. Having reviewed and considered Defendants' Motion and supporting briefs, Plaintiff's response thereto, and the entire record of this matter, the Court has determined that the relevant allegations, facts, and legal arguments are adequately presented in these written submissions, and that oral argument would not aid the decisional process. Therefore, the Court will decide this matter "on the briefs." See Eastern District of Michigan Local Rule 7.1(f)(2). As set forth below, this Court GRANTS Defendants' Motion, dismisses Plaintiff's Complaint with prejudice, and further places Adam Gantz, Nickolas Buonodono, and any other attorney associated with Gantz Associates on notice that the Court will carefully review any of their future submissions for violations of Federal Rule of Civil Procedure 11(b).

## II. FACTUAL BACKGROUND

On April 5, 2005, Plaintiff and his wife closed on a $180,000 Mortgage with Quicken Loans relative to their property in Highland Township, Michigan. (Plf's Compl., Dkt. # 1, at 19, ¶ 8; Ex. A. to Plf's Compl.). The Mortgage named Mortgage Electronic Registration Systems, Inc. (MERS) as nominee for Quicken and Quicken's successors and assigns. (Ex. A to Plf's Compl.). It also contained a power of sale and provided that MERS could assign the Mortgage. (*Id.*). MERS

assigned the Mortgage to Deutsche Bank Trust Company, as Trustee for the Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2005-QS9 (Trustee). (Ex. C. to Plf's Compl.). Defendant Ocwen Loan Servicing, LLC is the current servicer of the Loan. (Plf's Compl., Dkt. # 1, at 29, ¶ 64).

At some unspecified time, Plaintiff suffered "an economic hardship" and requested a loan modification. (*Id.* at ¶ 24). Ocwen then represented to Plaintiff that it would modify his loan only "if she (sic) were to fall behind on his payments." (*Id.* at ¶ 25). Consequently, Plaintiff stopped making his mortgage payments. (*Id.* at ¶ 26). While in default, Plaintiff continued to pursue a loan modification. He alleges, however, that the Defendants wanted no part in modifying Plaintiff's loan, so they put him through "Paperwork Hell" -- continuously representing to him that they had not received all necessary paperwork to evaluate Plaintiff's modification request. (*Id.* at ¶¶ 31-37). Defendants eventually declined to modify Plaintiff's Mortgage and instituted foreclosure proceedings. (*Id.* at ¶¶ 37, 64).

Before the scheduled Sherriff's Sale on September 10, 2013 (*Id.* at ¶ 69), Plaintiff commenced this litigation. Plaintiff alleges six causes of action: (1) a violation of Michigan's Loan Modification Statutes; (2) Breach of Contract; (3) Intentional Fraud; (4) Constructive Fraud; (5) Tortious Interference with

Contractual Relations; and (6) Civil Conspiracy.[1] Defendants timely removed this matter and have now moved to dismiss Plaintiff's Complaint.

## III. DISCUSSION

**A.      Rule 12 Standard**

In deciding a motion brought under Rule 12(b)(6), the Court must construe the complaint in the light most favorable to Plaintiffs and accept all well-pled factual allegations as true. *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). To withstand a motion to dismiss, however, a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The factual allegations in the complaint, accepted as true, "must be enough to raise a right to relief above the speculative level," and must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility of an inference depends on a host of considerations, including common sense and the strength of

---

[1] Plaintiff's Complaint also alleges causes of action under Michigan's foreclosure-by-advertisement statute (M.C.L. § 600.3204), Michigan's Regulation of Collection Practices Act (M.C.L. § 445.251 *et seq.*), and "accounting." He subsequently dismissed these claims without prejudice. (Dkt. # 9).

4

competing explanations for defendant's conduct." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013).

The Sixth Circuit has emphasized that the "combined effect of *Twombly* and *Iqbal* [is to] require [a] plaintiff to have a greater knowledge . . . of factual details in order to draft a 'plausible complaint.'" *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1051 (6th Cir. 2011) (citation omitted). Put another way, complaints must contain "plausible statements as to when, where, in what or by whom," *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 373 (6th Cir. 2011), in order to avoid merely pleading an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

## B. Plaintiffs' Claims Are Without Merit

### 1. Violation of Michigan's Loan Modification Statutes (Count II)

Plaintiff's Count II asserts that Defendants did not comply with certain former provisions of Michigan's loan modification statutes governing pre-foreclosure modification review.[2]  According to Plaintiff, he "contacted the

---

[2] Though Plaintiff's Count II cites three separate provisions (M.C.L. §§ 3204(4), 3205a, and 3205c), he relies on the two former provisions to the extent they require compliance with the latter.  The Court also notes -- without briefing from Defendants -- that prior to Plaintiff filing his Complaint, the Michigan legislature repealed § 3205c effective June 30, 2013.  *See Hardwick vs. HSBC Bank USA, N.A.*  2013 WL 3815632, at *2 (Mich. Ct. App. July 23, 2013).  Given the nebulous nature of "facts" set forth in Plaintiff's Complaint and, consequently, the Court's conclusion concerning Plaintiff's failure to sufficiently plead a claim under

5

foreclosing law firm within the requisite time-frame, and informed its representatives that he was exercising his right to participate in the statutory modification process." (Plf's Compl., Dkt. # 1, at ¶ 67). He also never received "the requisite program, process, and/or guidelines" to be used to determine his modification eligibility. (*Id.* at ¶¶ 68, 137). Instead of meeting with Plaintiff and providing him with statutorily mandated paperwork, Plaintiff claims that Defendants "rushed to the sheriff's sale" in order to take advantage of "the incredible financial windfall that the Trustee and the [unknown] Holder[ Defendants] would get from a bailout from the U.S. government." (*Id.* at ¶¶ 141, 148).

According to Plaintiff, Michigan's mortgage loan modification statutes "require[] the foreclosing party (or its designated agent) to meet with the borrower to determine whether he or she qualifies for a loan modification" and that this triggers a "90 day hold on foreclosure." ((Plf's Resp., Dkt. # 10, at 6) (citing M.C.L. § 600.3205c(1); Plf's Compl., Dkt. #1, at ¶¶ 136, 140). This is a blanket misstatement of law and unfortunately is not an isolated incident. In *Hewitt v. Bank of America, N.A.*, Judge Bell of the Western District of Michigan addressed a similar claim brought by Gantz Associates:

---

§ 3205c, the Court finds that it is unnecessary to examine whether § 3205c's subsequent repeal moots this claim.

6

>Plaintiff's complaint does not quote the correct deadline for requesting a loan modification. Plaintiff selectively quotes the foreclosure statutes to imply that he had 90 days to contact the designated entity to request a loan modification. Plaintiff cites Mich. Comp. Laws § 3205c(5), which discusses a 90-day time limit after notice, right before asserting that he contacted the foreclosing law firm "prior to the deadline." However, Plaintiff fails to cite § 3205c(1) which explains that § 3205c(5) provides 90 days not for contacting the designated entity but instead for the delivery of materials to the borrower (including calculations and a copy of the program, process, or guidelines used), and only comes into effect "[i]f a borrower has, either directly or through a housing counselor, contacted a person designated under section 3205a(1)(c) under section 3205b but the process has not resulted in an agreement to modify the mortgage loan." Section 3205b provides the relevant deadline for requesting a loan modification:
>
>>If a borrower wishes to participate in negotiations to attempt to work out a modification of a mortgage loan, within 30 days after the notice under section 3205a1 is mailed to the borrower, the borrower shall either contact the person designated under section 3205a(1)(c) directly or contact a housing counselor from the list provided under section 3205a.

2013 WL 3490668, at *9 (W.D. Mich. July 11, 2013) (internal citations and emphasis omitted).

Here, this Court finds that Plaintiff's mere parroting of the basic elements of Michigan's loan modification statutes fails to state a claim for relief. Plaintiff has not, for example, alleged when Defendants sent the § 3205a(1) notice or when he contacted Defendant's designee or a housing counselor within the 30 day period. Simply articulating that Plaintiff complied with the statutory requirements and Defendants did not are legal conclusions that fall well short of *Twombly/Iqbal*. As

7

Judge Edmunds so articulated in another Gantz Associates' matter: "As it is clear that the relevant [loan modification] statutory provisions provide meticulous directions for all parties involved in a foreclosure, absent more specific allegations the Court is left with pure conjecture, which is not sufficient." *Hiller v. HSBC Fin. Corp.*, 2014 WL 656258, at *5-6 (E.D. Mich. Feb. 20, 2014) (Edmunds, J.) (dismissing similar modification claims). Accordingly, this Court now joins Judge Edmunds and the numerous other courts that have rejected nearly identical loan modification claims filed by Gantz Associates. *See, e.g., West v. Wells Fargo Bank, N.A.*, 2013 WL 3213269, at 3 (E.D. Mich. June 26, 2013) (Zatkoff, J.) (plaintiff's assertion that they "request[ed] a copy of the program, process or guidelines that . . . will [be] use[d] to determine whether the borrower qualifies for a loan modification . . . fail[s] to plead any specific facts as to *how* they made the purported request (*i.e.,* in writing, verbally); *when* they made it; or *to whom* it was directed"); *Hewitt*, 2013 WL 3490668, at *9 (similar); *Baumgartner v. Wells Fargo Bank, N.A.*, 2012 WL 2223154, at *4 (E.D. Mich. June 15, 2012) (Steeh, J.) (similar); *Meyer v. CitiMortgage, Inc.*, 2012 WL 511995, at *3 (E.D Mich. Feb. 16, 2012) (Cohn, J.) (similar).[3]

---

[3] To the extent Plaintiff's Complaint asserts that the foreclosing law firm did not have authority to discuss loan modification (Plf's Compl., Dkt. # 1, at ¶¶ 146-47), such an assertion has no basis in law. *See, e.g, West*, 2013 WL 3213269, at *3 (rejecting similar claim made by Gantz Associates).

### 2. Breach of Contract and Tortious Interference with Contractual Relations (Count III and VI)

Plaintiff's Breach of Contract and Tortious Interference are virtually identical and, as such, may be analyzed together. "A party claiming a breach of contract must establish by a preponderance of the evidence (1) that there was a contract, (2) that the other party breached the contract and, (3) that the party asserting breach of contract suffered damages as a result of the breach." *Miller–Davis Co. v. Ahrens Const., Inc.*, 296 Mich. App. 56, 71 (2012). Under Michigan law, "[t]he elements of tortious interference are (1) a contract, (2) a breach, and (3) an unjustified instigation of the breach by the defendant." *Mahrle v. Danke*, 216 Mich. App. 343, 350 (1996). To state such a claim, "[a] plaintiff must allege the intentional doing of a per se wrongful act or the intentional doing of a lawful act with malice and unjustified in law for the purpose of invading plaintiff's contractual rights." *Liberty Heating & Cooling, Inc. v. Builders Square, Inc.*, 788 F. Supp. 1438, 1447 (E.D. Mich. 1992) (Edmunds, J.) (citation and emphasis omitted).

In support of these claims, Plaintiff asserts that the Trustee and Holder Defendants caused Ocwen to breach a contract -- the Mortgage and Note between Plaintiff and Quicken -- by instructing Plaintiff to default on his payments in order to qualify for loan modification programs. (Plf's Compl., Dkt. # 1, at ¶¶ 150-55, 188-94). More specifically, Plaintiff points to provisions of the Mortgage

9

governing his payment obligations, the lender's obligations as to how to allocate his payments (such as to taxes and insurance), and late charges and fees. (*Id.* at ¶ 152; *see also* Ex. A to Plf's Compl.). He then concludes that Defendants "breached these . . . requirements . . . by failing to credit Plaintiff for payments made, and by foreclosing instead of cleaning up their own mistake." (*Id.* at ¶ 153). As Judge Steeh explained in *Baumgartner*, these claims fit within Gantz Associates' narrative that lenders had a financial incentive to cause foreclosures in order to take advantage of the various "government bailout programs" created after the 2008 Financial Crisis:

> Plaintiffs theorize that Freddie Mac, which is entitled to a bailout of 100 cents on the dollar for foreclosures occurring prior to expiration of the receivership, has offered both financial incentives and punishments to [lenders and servicers] in order to induce [them] to proceed with foreclosure rather than attempt loss mitigation through available loan modification programs.

2012 WL 2223154, at * 5.

The problem with these allegations and this theory, however, is that they fall well short of stating claims for breach of contract and tortious interference. Plaintiff's allegations do not identify the specific terms of the contract allegedly breached -- such as identifying "what payments were made, when or how they were supposed to be credited, what mistakes were made, why they are considered mistakes under the contract, etc." *Anderson v. Bank of America*, 2013 WL 5770507, at *4 (E.D. Mich. Oct. 24, 2013) (Cohn, J.); *see also Hiller*, 2014 WL

10

656258, at *6-7 (similar). They also ignore the fact that the Mortgage and Note do not mandate loan modification, and that Plaintiff admits to defaulting on his Mortgage obligations. Plaintiff's breach of contract and tortious interference claims must, like the numerous other Gantz Associates' complaints before other courts here in this District, be dismissed. *See, e.g., Ordway v. Bank of America, N.A.*, 2013 WL 6163936, at *4 (E.D. Mich. Nov. 20, 2013) (Cohn, J.); *Palffy v. BSI Fin. Serv., Inc.*, 2013 WL 4718931, at *2 (E.D. Mich. Sept. 3, 2013) (Cleland, J.); *Baumgartner*, 2012 WL 2223154, at *5; *see also Hewitt*, 2013 WL 3490668, at *11 (characterizing such allegations as "frivolous" and "nonsensical").

### 3. Intentional Fraud and Constructive Fraud (Counts IV and V)

Plaintiff's fraud claims generally assert that Defendants' unidentified representatives told Plaintiff that he would have to fall behind on the Mortgage to qualify for a loan modification and then put him through "Paperwork Hell" by continuously lying to him about the status of his loan modification paperwork. (Plf's Compl., Dkt. # 1, at ¶¶ 24-36, 156-87). These allegations do not comply with the Federal Rules of Civil Procedure's requirement that fraud claims "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).

In *Cheesewright v. Bank of American, N.A.*, this Court previously addressed virtually identical claims of intentional and constructive fraud brought by Gantz Associates in another foreclosure matter:

11

> Counts 8 and 9 of Plaintiffs Complaint, respectively, allege intentional fraud and constructive fraud, stating that (i) Defendant lied to Plaintiffs by informing them that the only way to receive a modification was to intentionally fall behind on their loan payments and (ii) that Plaintiffs relied on those statements to their detriment. To succeed on a claim for fraud, Plaintiffs must plead and prove that "(1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage." *M & D, Inc. v. McConkey*, 231 Mich. App. 22, 27, 585 N.W.2d 33 (1998). Indeed, in pleading fraud, Rule 9(b) requires that "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).
>
> The Sixth Circuit has interpreted Rule 9(b) as requiring that Plaintiffs describe specific statements, identify the speaker, specify when and where the statements were made, and explain why the statements were fraudulent. *Frank v. Dana Corp.*, 547 F.3d 564, 569-70 (6th Cir. 2008). "The threshold test is whether the complaint places the [D]efendant on sufficient notice of the misrepresentation, allowing the [Defendant] to answer, addressing in an informed way the [Plaintiffs'] claim of fraud." *Kashat v. Paramount Bancorp, Inc.*, No. 09–10863, 2010 WL 538295, at *1, *4 (E.D. Mich. Feb.10, 2010). When a party fails to meet its Rule 9(b) burden, dismissal is warranted.
>
> *It is clear that Counts 8 and 9 could not even survive a Rule 12(b)(6) motion to dismiss, let alone summary judgment. Plaintiffs' Complaint does not describe any specific statements, does not identify the speaker, the time or place of the statements, or explain how the statements were fraudulent. Thus, these claims should be dismissed under Rule 12(b)(6) for failure to state a claim.*

2013 WL 639135, at *6-7 (E.D. Mich. Feb. 21, 2013) (Rosen, C.J.) (emphasis added). This Court's conclusions in *Cheesewright* regarding the sufficiency of such fraud claims brought by Gantz Associates do not stand alone in this District.

*See, e.g.*, *Talton v. BAC Home Loans Servicing LP*, 839 F. Supp. 2d 896, 912-13 (E.D. Mich. 2012) (Lawson, J.); *Hiller*, 2014 WL 656258, at *7-9; *Ordway*, 2013 WL 6163936, at *3; *Anderson*, 2013 WL 5770507, at *4-5; *Stroud v. Bank of America, N.A.*, 2013 WL 3582363, at *4-5 (E.D. Mich. July 12, 2013) (Duggan, J.); *West*, 2013 WL 3213269, at *4; *Agbay v. Wells Fargo Bank, N.A.*, 2012 WL 3029825, at *8 (E.D. Mich. July 25, 2012) (Cohn, J.); *Baumgartner*, 2012 WL 2223154, at *8; *Soto v. Wells Fargo Bank, N.A.*, 2012 WL 113534, at *6-8 (E.D. Mich. Jan. 13, 2012) (Cohn, J.); *see also Hewitt*, 2013 WL 3490668, at *5-6.

For the reasons set forth in *Cheesewright* and the numerous authorities cited above, this Court finds that Plaintiff has not sufficiently pled his fraud claims with particularity and therefore dismisses these claims.[4]

### 4.    Civil Conspiracy (Count VII)

Plaintiff's remaining claim, civil conspiracy, is easily dismissed. "[A] claim for civil conspiracy cannot exist in the air; rather, it is necessary to prove a separate, actionable tort." *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n,* 257 Mich. App. 365, 384 (2003) (citation omitted). Because Plaintiff

---

[4] Plaintiff's Complaint also asserts that Defendants "engaged in a . . . fraudulent conspiracy to fabricate a phony paper trail that would suffice as a 'record chain of title,'" (Plf's Compl., Dkt. #1, at ¶ 175), but has put forth no facts indicating that Defendants made such a representation on this basis *to him* or that *he relied upon* such a representation. Finally, due to Plaintiff's lack of particularity, it is therefore unnecessary to decide whether the Statute of Frauds alternatively bars Plaintiff's fraud claims. (Defs' Mtn., Dkt. # 5, at 28-29).

has not sufficiently pled a separate, actionable tort,[5] his civil conspiracy claim must be dismissed. *See also Ordway*, 2013 WL 6163936, at *4 (similar); *Anderson*, 2013 WL 5770507, at *6 (similar); *Palffy*, 2013 WL 4718931, at *2 (similar); *Baumgartner*, 2012 WL 2223154, at *5 (similar).[6]

## IV. CONCLUSION

In conclusion, the Court dismisses Plaintiff's Complaint with prejudice.[7] The Court is compelled to comment additionally upon Plaintiff's Complaint, and more specifically, his counsel. The certain irony baked into the Complaint is not

---

[5] As part of his civil conspiracy count, Plaintiff claims "Defendants . . . conspired with one another with the intent to violate the Fair Debt Collection Practices Act." (Plf's Compl., Dkt. # 1, at ¶ 196). Plaintiff does not assert a violation of the Fair Debt Collection Practices Act and this is likely just a careless cut-and-paste from other complaints filed by Gantz Associates.

[6] The Court also declines to address whether Plaintiff's November 8, 2011 bankruptcy filing -- in which he did not disclose any potential claims against Defendants -- precludes Plaintiff from asserting any pre-bankruptcy claims given that his Complaint fails to state a claim for relief. (Defs' Mtn., Dkt. # 5, at 37-38).

[7] It is this Court's general practice to provide a plaintiff with an opportunity to amend his Complaint when faced with a dismissal that is readily curable because slight defects should not condemn an otherwise viable complaint. This practice need not be followed here, however, because amendment would be futile. *See, e.g., Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420-21 (6th Cir. 2000). In response to Defendants' motion, Plaintiff neither hinted at additional factual allegations he could add to save his claims from dismissal nor requested an opportunity to amend his Complaint. Accordingly, this Court declines to provide Plaintiff with such an opportunity. *See, e.g., Winget v. JP Morgan Chase Bank, N.A.,* 537 F.3d 565, 572 (6th Cir. 2008) ("The district court does not abuse its discretion in failing to grant a party leave to amend where such leave is not sought.") (internal quotation marks and citations omitted); *Lewis v. Wheatley*, 528 F. App'x 466, 470 (6th Cir. 2013) (amendment is futile when, among other things, a plaintiff does not "provide[] any additional factual allegations that [it] would submit in an amended complaint").

lost on this Court. Plaintiff declares throughout his Complaint -- spanning 209 paragraphs and 40 pages (excluding exhibits) -- that he was the victim of "Paperwork Hell," an intentional effort by Defendants to drown Plaintiff in an endless stream of paperwork related to a loan modification that was never coming in order to "force" foreclosure upon Plaintiff. "Paperwork Hell" is not a concept unique to Plaintiff's claims. It is, rather, a theory prominently featured in complaints filed Gantz Associates on behalf of other struggling homeowners. A review of complaints filed by Adam Gantz and/or Nickolas Buonodono in this District alone reveals at least forty-five other foreclosure matters containing a similar theme, all filed since 2011 -- none of which have successfully survived dispositive motion practice.[8]

Upon further review of these other cases, the Court is troubled by the all too familiar pattern of various motions,[9] amended complaints in response to motions to

---

[8] To be sure, the respective parties ultimately dismissed a majority of these cases. Gantz Associates is also associated with close to fifty other foreclosure-related actions in this District that do not reference "Paperwork Hell," with a majority of these cases either settling or being disposed of through motion practice. The Court could only locate one instance where Gantz Associates successfully survived a dispositive motion in a foreclosure-related action in this District. *See Maraulo v. CitiMortgage, Inc.*, 2013 WL 530944 (E.D. Mich. Feb. 11, 2013) (Goldsmith, J.) (granting in part and denying in part defendants' motion to dismiss).

[9] One such tactic, though not employed in this matter, is to move to remand after removal, arguing that the removing entity did not include various inconsequential documents with its notice of removal. *See Burniac v. Wells Fargo Bank, N.A.*, 2013 WL 6631582, at *2 n.3 (E.D. Mich. Dec. 17, 2013) (Goldsmith, J.)

dismiss, stipulated extensions to briefing schedules, and appeals that are in all likelihood designed to delay a foreclosure or subsequent eviction. Such efforts ironically flip "Paperwork Hell" back onto banks, lenders, and servicers, and consequently, onto this Court. This pattern is troubling and sounds in an intentional abuse of the deliberative nature of the judicial process. What is more troubling is that, as Defendants point out, the Gantz Associates' website formerly proclaimed the firm's ability to delay proceedings in situations where a homeowner did not have legitimate claims: "Even with no defenses, **you can still force the bank to prove its case**, which may afford months or **even years in your home.**" How We Help, Gantz Associates (July 2, 2012), http://web.archive.org/web/20120702220604/http://gantzassociates.com/forclosure-prevention/how-we-help/.

There is no doubt that some homeowners have actual, legitimate claims arising out of the foreclosure process. It also goes without saying that this Court sympathizes with the plight of homeowners here in Michigan -- and nationwide -- struggling to remain in their homes, particularly in light of the economic climate that has gripped this state and nation in recent years. The Court is not sympathetic, however, to counsel who bring questionable claims and utilize various delay tactics in an effort to simply slow property proceedings in state court.

---

(collecting cases and noting that "Plaintiff's counsel's firm has repeatedly raised this same argument and failed in courts across this district").

Such actions, unfortunately, are not novel. This Court has previously articulated its concern regarding dubious mortgage foreclosure actions, describing them as "a virtual fraud on the public:"

> To compound the very unfortunate circumstances of property owners like Plaintiffs . . . who are facing foreclosure and/or eviction from their homes by giving them false hope through the filing [of] vexatious and frivolous lawsuits, and then using those lawsuits as nothing more than a delay tactic, is not only unfair to the defendant banks and lenders who have to defend the actions, but also is unfair to the plaintiffs themselves who cannot afford to pay their mortgages much less pay an attorney under the false pretense of purs[ing] a legitimate legal claim and remedy.

*Landis v. Fannie Mae*, 922 F. Supp. 2d 646, 650 (E.D. Mich. 2013) (Rosen, C.J.). It has also sanctioned plaintiff's attorneys for filing such actions. *See id.*; *Yanakeff v. JP Morgan Chase Bank, N.A.*, 2013 WL 6328673, at *10 (E.D. Mich. Dec. 5, 2013) (Rosen, C.J.); *Issa v. Provident Funding Grp., Inc.*, 2010 WL 538298, at *5-6 (E.D. Mich. Feb. 10, 2010) (Rosen, C.J.). While the Court does not find that similar sanctions are appropriate here, it emphasizes that consistently advancing the same rejected legal theories and pleadings borders on sanctionable and ethical misconduct. The Court strongly suggests that Plaintiff's counsel -- Adam Gantz, Nickolas Buonodono, and any other attorney associated with Gantz Associates -- both review their obligations under Federal Rule of Civil Procedure 11 and the plight of other attorneys before this Court as they proceed in advancing or maintaining similar actions in the future.

17

For all of the foregoing reasons,

IT IS HEREBY ORDERED that Defendants' Motion to Dismiss [Dkt. # 5] is GRANTED and Plaintiff's Complaint is dismissed with prejudice.

**IT IS SO ORDERED.**


Dated: March 31, 2014 s/Gerald E. Rosen
GERALD E. ROSEN
CHIEF, U.S. DISTRICT COURT


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, March 31, 2014, by electronic and/or ordinary mail.

s/Julie Owens
Case Manager, 313-234-5135